### BENNETT, administrator, *et al. v.* HINSON.

1. No demurrer to the petition was filed; and the plaintiff proved his case as laid, establishing a contract between the plaintiff and the deceased, whereby the mother, in consideration of his personal care and services and support, contracted with the son, who alone remained a member of her household, to deed or will him the home-place on which she lived, with all the personal property thereon. The evidence that the services were performed and the support afforded in compliance with the contract is undisputed. The verdict was therefore supported by evidence.

2. It was not error to admit in evidence, over the objection of irrelevancy and immateriality, certain quitclaim deeds purporting to convey to the petitioner whatever rights the grantors may have had in the tract of land which was the subject of controversy. The testimony could not have been harmful to the plaintiffs in error, for the reason that the execution of the deeds of itself tended to support the theory that the title of the petitioner, acquired as compensation for services, was not perfect but needed title derived from the heirs of the donor to support it.

No. 5255. February 17, 1927.

Equitable petition. Before Judge Highsmith. Jeff Davis superior court. December 12, 1925.

*Gordon Knox,* for plaintiffs in error. *John Rogers,* contra.

Russell, C. J. Lonnie C. Hinson filed a petition in the superior court of Jeff Davis County against J. C. Bennett, as the duly appointed and qualified administrator of the estate of Mrs. Mary J. Hinson, deceased, and ten named heirs at law of said Mrs. Hinson, and alleged substantially the following: On March 14, 1916, petitioner's father, Elias Hinson, died, leaving petitioner's mother, Mrs. Mary J. Hinson, with the sole care and management of the farm on which they resided, it being lot of land number 257 in the first land district of Jeff Davis County, containing 490 acres, more or less. At the time of the death of her husband, and for a long time prior thereto, Mrs. Hinson was the owner of said lot of land, which ownership continued until the time of her death. She owned all the personal property situated thereon except such as belonged to petitioner, who then, and has since, resided on said farm. On March 18, 1916, or some time immediately thereafter, petitioner's mother, being alone with the exception of petitioner, a single man, "made and entered into a contract and agreement with petitioner as hereafter shown, to wit:

Appeal and error, 4 C. J. p. 691, n. 86; p. 852, n. 56; p. 970, n. 57; p. 971, n. 58.

Wills, 40 Cyc. p. 1072, n. 31.

(a) Petitioner under said contract and agreement with his mother was to continue to live on the premises with his mother, Mrs. Mary J. Hinson, and assist her in attending to her business affairs, and work and cultivate the land heretofore described, and assist in the management and control of other realty of his mother, and work and support his mother until her death, and that petitioner was to perform said services without a fixed salary. (b) That at the time of his mother's death, under the terms and conditions of said contract and agreement with his mother, Mrs. Mary J. Hinson, petitioner was to receive by will or deed all of the land described, . . together with any and all personal property located on said described realty belonging to his mother. (c) That the land Mrs. Mary J. Hinson under said contract and agreement was to give petitioner, and contracted to deed or devise to petitioner as a recompense for his services aforesaid under said contract and agreement, at her death, was as follows: 'All of lot of land number 257 in the first land district of Jeff Davis County, State of Georgia, containing 490 acres, more or less, together with all improvements thereon.' (d) That the personal property Mrs. Mary J. Hinson under said contract and agreement was to give · petitioner, and contracted to deed or devise to petitioner as a recompense for said services aforesaid, under said contract and agreement, at her death, was as follows: 'All wagons, buggies, harness, horses and mules, hogs, cows, corn, hay, oats, together with all farming tools and equipment, household and kitchen furniture, and all other personal property located on said lot of land aforesaid belonging to Mrs. Mary J. Hinson at the time of her death on or about the 26th day of September, 1923.' " Defendants have no right or title to said land and personal property, except as heirs of Mrs. Mary J. Hinson, deceased, under whom both petitioner and defendants claim title. In accordance with said contract and agreement, which his said mother made known to the other children at dates unknown to petitioner, he continued to live with his mother, constantly performing the services provided by the terms of said contract to the entire satisfaction of his mother until her death on or about September 26, 1923; and during said entire time petitioner had the sole care of his mother and was her sole protection; he devoted his time to her every wish and pleasure, and strived at all times to successfully conduct her

business affairs and to successfully cultivate and manage the farm and improve the premises. Petitioner's mother recognized his full performance of his contract, and intended to make him a deed or leave him by will the real estate and personal property described, and reaffirmed her contract on the night of September 22, 1923, after she was stricken with apoplexy and realized she was going to die in a few hours or days, but while in full possession of her mental faculties, and then "reiterated the contract with petitioner, so made as aforesaid, in the presence of Mrs. Lizzie Shakleford and C. W. Shakleford, . . and stated at that time in the presence of said parties that it was and had been her intention to make petitioner a deed to all the property aforesaid in compliance with her contract and agreement aforesaid, and that she had given petitioner all of said real estate and personal property as a recompense for services aforesaid, and as provided by the covenants of the parol contract and agreement made between petitioner and Mrs. Mary J. Hinson after the death of his father, on the date aforealleged." During the period between March 18, 1916, and September 26, 1923, petitioner earned from independent sources sums of money approximating $200 a year, which was turned over to his mother for safekeeping and to be used in the improvement of the premises contracted to be given to him as recompense for his services. Under the faith of the contract and in compliance therewith petitioner cleared portions of the land and made other valuable improvements thereon, and permitted his money to be used in improving the same. Mrs. Mary J. Hinson died without leaving a will which is entitled to probate, and without making a deed conveying the described realty and personalty to petitioner; and petitioner is without remedy at law. He is in adverse possession of said described property, claiming title to the land and personal property under the facts heretofore shown. He prays that title to the property be decreed in him, and that said administrator be required to convey the described land and personal property to him in accordance with the terms of the contract and agreement.

The defendants filed an answer in which they denied the material allegations of the petition. Upon the trial of the case the jury returned a verdict finding in favor of the petitioner. The defendants moved for a new trial upon the general grounds, and

45

by amendment added four grounds, three complaining of the insufficiency of the evidence, and the fourth assigning error upon the admission in evidence by the court of certain quitclaim deeds executed by heirs of Mrs. Mary J. Hinson to the petitioner after the death of said Mrs. Hinson, one by Mrs. Lizzie Shakleford, conveying a one-fifth undivided interest in the land in dispute, one by C. O. Hinson, conveying a one-ninth undivided interest in same, one by D. F. Hinson, conveying a like interest, and one by John W. Hinson Jr., conveying a similar interest. Defendants objected to their admission, upon the ground that they were immaterial, irrelevant, and illustrated no issue in the case. The trial judge overruled the motion for a new trial, and that judgment is excepted to. As well stated by counsel for plaintiffs in error in his brief, "There are only two issues to be decided in this case, and only two questions to be determined by this court. These issues are: was the evidence adduced upon the trial legally sufficient to authorize the verdict rendered by the jury, and did the trial judge err in admitting certain deeds in evidence?" The headnotes state our rulings on the two questions.

*Judgment affirmed. All the Justices concur, except*

ATKINSON and HINES, JJ., dissenting. We dissent from the ruling contained in the second headnote and the corresponding portion of the opinion. These deeds were clearly inadmissible upon the ground that they were irrelevant. They were not admissible as admissions of the makers as parties to the record, under the Civil Code, § 5776, because, after making these deeds, the makers had no joint interest in this land with the other heirs of the mother. Therefore it was error to admit them. We can not say that this error was a harmless one. We can not say what view the jury took of this evidence. The jury might have taken the view that these documents amounted to admissions against the interests of the makers. The jury might have taken the view that the makers would not have made these deeds, as it was against their interests to make them, if the plaintiff did not have a good cause. Certainly the plaintiff introduced these deeds because he thought they would be helpful to him. The jury might have taken this view; and if they did so, the admission of this evidence was necessarily harmful to the defendants.